IN THE UNITED STATES DISTRICT COURT, FOR THE DISTRICT OF NEW JERSEY
50 WALNUT STREET, NEWARK, NEW JERSEY 07101, TEL: 973 645 3730
AMENDED COMPLAINT: CASE NUMBER: 11-361 (DMC)

Harry Dunleavy,
Plaintiff
vs.
Edward Gannon, Advisory Committee on Judicial Conduct, including Alan Handler, John Tonelli, and Candace Moody, The New Jersey Attorney General's Office and Lt. James MacInness, The New Jersey State Police, Office of Attorney Ethics, including John Palm, Robert Stober, and Charles Centinaro, Independent Attorneys Barry Frank, John Breslin, Gary Lightman, Lakeland Bank and its employees Laurie Veith, Timothy Matteson, and Peter Romaine,
Defendants

**Amended Civil Complaint**
**A Trial By Jury is Requested**

## INTRODUCTION

1. Plaintiff, Harry Dunleavy, Attorney Pro Se, for his complaint alleges that: This is an action for legal and equitable relief against the above-named Defendants for their unlawful actions against him in violation of the Civil Rights Act and the Laws of the State of New Jersey. Additionally, the complaint charges the Defendants with conspiracy, cover-ups, deliberate lies, sabotage, fabrications, willful and malicious concealment of vital documents, fraudulent removal of documents from a court file, and a judge allowing Defendants and their attorneys to lie to the Court and ignore Court rules and the law with impunity.

2. JURISDICTION: Federal jurisdiction is based on The Civil Rights Act, 42 USC Sections 1983 and 1985(2), the 14th Amendment, and the pendant jurisdiction of the Court with respect to any State or Federal causes of action.

## PARTIES

Defendant, Edward Gannon is, and at all relevant times herein has been, a State Judge at the Superior Court of New Jersey in Newton. Alan Handler, Candace Moody, and John Tonelli are, and at all relevant times herein have been, officials of the Advisory Committee on Judicial

Conduct for the State of New Jersey. The New Jersey Office of Attorney Ethics, of which John Palm and Robert Stober are members and Charles Centinaro is director, is an organization taxed with overseeing villainous behavior of attorneys. James MacInness was an investigator with the New Jersey Attorney General's Office who ignored everything. All of the above were acting under color of State law and have no immunity from prosecution for violating Plaintiff's civil rights. Gary Lightman, Barry Frank, and John Breslin, were Attorneys of Record in a previous case brought by this Plaintiff. Defendant Lakeland Bank, a Defendant in the above referenced case, and its employees, Laurie Veith, Timothy Matteson, and Peter Romaine were properly subpoenaed through Attorney John Barbarula, who was the attorney of record for Lakeland Bank in the State case, as per R1:9-1 and R4:14-2 to show up in court as witnesses on August 17, 2009, but who ignored the subpoenas.

## FACTUAL ALLEGATIONS

1. On April 26, 2006, Charles W. Cart, now a convicted criminal, falsely advised the Plaintiff to invest twenty-five thousand dollars ($25,000.00) in what Plaintiff was led to believe was a health insurance claims company called Skylands Administrators in Milford, Pennsylvania. No such company ever existed or was ever formed. On April 28, 2006, Plaintiff's check drawn on his Sussex Bank account was **incorrectly** deposited into the account of a different named company called Skylands Benefit Consultants, LLC., in a Lakeland Bank in New Jersey and fraudulently and clandestinely funneled to pay debts for a strip club in Florida called the "Wild Coyote." According to the club's advertisement a lady was given two free drinks if she donated her bra. Margarita Cart, wife of convicted criminal Charles W. Cart, Peter DeLisa, and James Flanagan, were the only shareholders/owners of Skylands Benefit Consultants, LLC, and they diverted plaintiff's funds to pay debts due on the Florida strip club in which they along with convicted criminal Charles W. Cart had personal interests. DeLisa was the only individual at that point in time with the authority to write checks for the LLC and transfer funds. One Kelly Little, daughter-in-law of Margaret

Cart and convicted criminal Charles W. Cart was later authorized to make money transfers for Skylands Benefit Consultants. All of the above individuals, in addition to Lakeland Bank and the accountant for Skylands Benefit Consultants, McIntyre & Company, refused to co-operate with either the Plaintiff or his bank, Sussex Bank, when an attempt was made to ascertain the name on the account at Lakeland Bank into which Plaintiff's $25,000.00 check was deposited.

2. On December 11, 2007, charges were filed against the referenced individuals, Charles W. Cart, Margarita Cart, Charles Cart Jr., Peter DeLisa, James Flanagan, and Kelly Little, in addition to Lakeland Bank, and McIntyre & Company, the accounting firm for Skylands Benefit Consultants, LLC, in the Superior Court of New Jersey in Newton. The case was assigned to Judge Edward Gannon. On December 27, 2007, John Barbarula, attorney for Lakeland Bank, filed a response and a cross claim against all the other Defendants. On January 4, 2008, Gary Lightman, attorney for the remaining Defendants, filed a response and a cross claim against Lakeland Bank. On June 6, 2008, Attorney Lightman was allowed to withdraw from representing all of his previous clients except shareholder/owner Peter DeLisa, contrary to the objections of the Lakeland Bank Attorney and the Plaintiff. On May 5, 2008, Attorney Barry Frank entered his name with the Court, as Counsel of Record for shareholder/owner James Flanagan. Attorney John Breslin did likewise on another date as counsel for the accountant McIntyre and Company. Henceforth, the remaining Defendants represented themselves pro se. All of the Defendants refused to properly cooperate during discovery and most of them and their attorneys felt they were above the law and didn't cooperate at all.

3. Despite acknowledging that Plaintiff was defrauded and even raised the question as to why the State Attorney General hadn't taken action, Defendant Judge Edward Gannon knowingly and deliberately violated Plaintiff's rights under The Civil Rights Act, 42 USC Sections 1983, and 1985(2) by holding the Plaintiff to higher standards than attorneys, which hadn't been the law for thirty-five years as per Haines v. Kerner, 404 U.S. 519, 92 S. CT. 594 (1972), which actually states that pro se plaintiffs do not even have to meet the same standards as lawyers. He allowed attorneys and their clients to: ignore Court rules; lie to the Court; ignore time lines; ignore notices to produce documents; ignore notices of depositions; ignore notices to show up for depositions; ignore interrogatories; and ignore subpoenas to show up in Court. He denied Plaintiff the right to: have witnesses; the right to cross examine a witness; the right to take depositions of Defendants; knowingly and deliberately issued veracity lacking orders; totally ignored two motions filed by the Plaintiff for Summary Judgment; sent the case to non-binding arbitration without affording Plaintiff the opportunity to acquire interrogatories and take depositions; awarded costs to non-existent witnesses; claimed email evidence from a Pennsylvania State agency was hearsay; insulted the Plaintiff on at least two occasions; and **falsely claimed that Plaintiff's written English was incomprehensible**. On March 3, 2008, and continually thereafter, Judge Gannon violated Plaintiff's civil rights by endorsing Attorney Gary Lightman's refusal to produce any documents of essence to the case which Plaintiff requested on January 29, 2008, by certified mail referenced 7005 1160 0003 0119 7755 and refused by Lightman on February 27, 2008.

4. On June 6, 2008, Judge Gannon violated Plaintiff's rights by denying his motion of May 5, 2008, to order Defendant Lakeland Bank to name the employee who incorrectly deposited

his check made payable to Skylands Administrators into an incorrect account, named Skylands Benefit Consultants, thereby allowing it to be secretly funneled to Florida to pay debts for a strip club in which one or more of the Defendants had a personal interest. Judge Gannon later endorsed Lakeland Bank's actions in refusing to furnish the Plaintiff with the addresses where three employees of Lakeland Bank, Laurie Veith, Timothy Matteson, and Peter Romaine, could be subpoenaed.

5. Judge Gannon violated Plaintiff's civil rights and acted in excess of his judicial authority by endorsing Attorney Lightman's actions in ignoring an offer sent to him from Plaintiff by certified mail on June 11, 2008, referenced 7007 0710 0003 9337 7644, to pick a date for depositions and additionally endorsing the actions of Attorney Lightman and his client, shareholder/owner Peter DeLisa, to ignore a notice by certified mail to take depositions dated June 27, 2008, and then endorsed their failure to show up for said depositions on July 15, 2008, which cost the Plaintiff three hundred dollars ($300.00) for a court reporter.

6. Judge Gannon violated Plaintiff's civil rights and acted in total excess of his judicial authority by endorsing the actions of Barry Frank, Attorney for shareholder/owner James Flanagan, by allowing him to act as if he was above the law and ignore everything, including: a response to the charges filed against his client, to ignore interrogatories, to ignore an offer by certified mail referenced 7007 0720 0004 9447 7637 to pick a date for depositions, to fail to respond to a notice of depositions by certified mail, to fail to show up with his client for depositions on July 15, 2008, to fail to attend Court on August 17-19, 2009, after being properly subpoenaed, and, most importantly, to cover up for Attorney Frank by knowingly and deliberately issuing a veracity lacking order dated March 17, 2009, falsely and deliberately claiming that Frank was not an Attorney of Record. Judge Gannon

falsely and deliberately noted in his decision referenced above which reads in part: "There has been no appearance of attorney Frank in the court records in any form or manner." Attorney Frank filed with the court on May 5, 2008, as Attorney for James Flanagan. **Why the filed document mysteriously disappeared from the court file in Newton can only be answered by Judge Gannon and Ethics Chairman Alan Handler but proof does exist.**

7. Judge Gannon violated Plaintiff's civil rights and demonstrated his deliberate bias against the pro se plaintiff using double standards by denying his motion of October 6, 2008, to obviate an arbitration hearing because of incomplete discovery while simultaneously granting Attorney Barbarula's motion to set aside an arbitration hearing for the very same reason, incomplete discovery, on November 7, 2008.

8. Judge Gannon violated Plaintiff's rights and deliberately sabotaged his case by endorsing the actions of three listed witnesses from Defendant Lakeland Bank, Laurie Veith, Timothy Matteson and Peter Romaine, to ignore subpoenas to appear in Court on August 17-19, 2009, subpoenas which were properly issued through their attorney, John Barbarula, as per R1:9-1 and R4:14-2. No motion was filed by Attorney Barbarula until the morning of the trial and Judge Gannon's action blindsided the Plaintiff and stripped him naked of his witnesses, deliberately sabotaging his case.

9. Judge Gannon violated Plaintiff's civil rights by not allowing the Manager of Sussex Bank's Newton Branch, Florence Watt, a listed witness who showed up in court, to give expert testimony on plaintiff's behalf. He also violated Plaintiff's rights by not allowing Plaintiff's wife, Mary Dunleavy, a listed witness, to give evidence on his part on August 17, 2009.

10. Judge Gannon violated Plaintiff's rights by endorsing the actions of Attorney John Breslin to ignore a notice of depositions, to not show up for depositions, to not show up in Court for

his own motion, and to not notify the Plaintiff on another occasion that he had obtained an adjournment. Judge Gannon also violated Plaintiff's rights by issuing a veracity lacking order on November 7, 2008, falsely claiming that Plaintiff did not file an opposition to Attorney Breslin's motion of July 18, 2008, for dismissal. The Plaintiff had indeed filed an opposition to Breslin's motion.

11. Judge Gannon violated Plaintiff's rights by endorsing the actions of Kelly Little, who had financial authorization to act on behalf of Skylands Benefit Consultants, to ignore interrogatories, a notice to take depositions, and her refusal to show up for depositions on July 15, 2008.

12. Judge Gannon violated Plaintiff's civil rights by **completely ignoring** his default motion for summary judgment dated July 25, 2008, based on the refusal of the Defendants to produce documents, answer interrogatories, refusal to pick or cooperate in choosing a date for depositions, and their refusal to show up for depositions on July 15, 2008, costing the plaintiff three hundred dollars ($300) for a court reporter.

13. Judge Gannon violated Plaintiff's civil rights by denying his motion of June 26, 2009, to open discovery for a limited period of time to acquire documentation from newly discovered sources, which Defendant and State Investigator James MacInness should have uncovered if he really had investigated, which would have demonstrated that Plaintiff's money was illegally funneled to Florida to pay debts for the "Wild Coyote" strip club in which one or more of the Defendants had a personal interest.

14. Judge Gannon violated Plaintiff's rights by endorsing the actions of shareholder/owner Margarita Cart, who had deliberately frustrated the Plaintiff throughout the proceedings by refusing to accept interrogatories sent to her home by certified mail; by refusing to show up

for depositions or produce documents; awarding her costs of $1,433.96 without any documentation whatsoever; and falsely claiming that the charge against her was frivolous.

15. Judge Gannon violated Plaintiff's rights with a fraudulent and bizarre action by awarding $500.00 for non-existent witnesses to three Lakeland Bank employees, Laurie Veith, Timothy Matteson, and Peter Romaine, who ignored properly issued subpoenas to show up in Court on August 17, 2009. Laurie Veith, who answered the interrogatories for Lakeland Bank, was potentially the most essential witness of the entire case and Judge Gannon's actions in freeing her from testifying blindsided Plaintiff and sabotaged his case.

16. Judge Gannon violated Plaintiff's rights by refusing to allow the charges against Lakeland Bank be placed before the jury and ruling that this action was taken because the Plaintiff didn't produce expert bank witnesses, while simultaneously refusing to allow Sussex Bank Manager Florence Watt, who was present in court to testify on behalf of Plaintiff, and endorsing the actions of three witnesses from Lakeland Bank, Laurie Veith, Timothy Matteson, and Peter Romaine to ignore properly issued subpoenas to show up in court and be cross examined.

17. Judge Gannon violated Plaintiff's rights by refusing to allow the charges against shareholder/owner Peter DeLisa be placed before the jury. DeLisa was the only individual who had the authority to transfer funds from the Lakeland Bank account in May 2007, to the Florida strip club. By any logical standards, DeLisa would appear to be the most culpable individual for transferring Plaintiff's money to Florida to pay debts for the strip club in which he had a financial interest. Judge Gannon allowed DeLisa's Attorney to remonstrate on DeLisa's background in law enforcement but denied Plaintiff the right to question DeLisa

as to why he was fired from the Bergen County Prosecutor's Office for lying under oath in a criminal case.

18. Judge Gannon violated Plaintiff's rights by rejecting his motion for a new trial on October 23, 2009, and totally ignoring his written request of October 30, 2009, to remove his fraudulent award of $500.00 for non existent witnesses.

19. Judge Gannon violated Plaintiff's civil rights by knowingly, deliberately, and falsely stating in an order dated October 30, 2009, that Plaintiff "Rejected an arbitration award of $25,000.00." Convicted criminal Charles W. Cart refused to pay the award!

20. On March 22, 2010, Plaintiff filed a complaint with the Advisory Committee on Judicial Misconduct which elucidated on violations by Judge Gannon of the Plaintiff's rights, including the removal of a document from the court file. The Canons referenced were: Canon 2: A and B; Canon 3: A (1) (2) (3) (6) (7); B (1) (3b); C (1) (a). The Committee, under Chairman Alan Handler, Director John Tonelli, and Attorney Candace Moody, refused to investigate the discriminatory actions of Judge Gannon and issued a formal letter sweeping things under the rug. The Committee also rejected freedom of information act requests and open public record requests to turn over records of any meeting held regarding Plaintiff's complaint. The Committee, under Chairman Handler, also refused any and all details regarding the amount of taxpayer's money allotted annually to this Committee, which appears to be nothing more than a paid welfare agency misusing taxpayer's funds. Tonelli told the Plaintiff that they work for the Court and are immune from Freedom of Information Act requests while Attorney Moody refused to speak with the Plaintiff or return several of his calls.

21. Gary Lightman, Attorney for shareholder/owner Peter DeLisa, violated Plaintiff's rights during the discovery period by: refusing to produce any documentation on February 27, 2008; ignoring Plaintiff's offer dated June 11, 2008 to pick his own date for depositions; deliberately lied by falsely claiming on July 2, 2008, that no such offer was made; failing to show up for depositions on July 15, 2008, after being properly noticed; attempting to illegally take Plaintiff's deposition over the telephone on December 9, 2008, without any prior notice; conspiring along with Attorneys Breslin and Frank to frustrate the Plaintiff by not showing up for depositions on July 15, 2008; failing to show up in court on more than one occasion; sending abusive emails to the Plaintiff in addition to a recorded insulting telephone call.

22. Attorney Barry Frank, counsel for shareholder/owner James Flanagan, placed himself above the law and deliberately frustrated the Plaintiff by ignoring everything, including: an answer to the charges, interrogatories, an offer by certified mail dated June 11, 2008, to pick a date for depositions, failure to show up for depositions on July 15, 2008, along with his client James Flanagan after being properly noticed by certified mail, and deliberately ignoring a subpoena to attend Court on August 17, 2009.

23. John Breslin, Attorney for McIntyre & Company, deliberately misled the Plaintiff by picking a date of July 14, 2008, for depositions, then changing it to July 15, 2008. In a well organized plan with Attorneys Lightman and Frank, and the pro se defendants, Breslin failed to show up at his office for the depositions on July 15, 2008. This action cost the Plaintiff three hundred dollars for a court reporter. Breslin also failed to show up in Court for his own motion on August 15, 2008, having failed to notify the Plaintiff that he had acquired an adjournment. **Attorney John Breslin has a scurrilous problem with veracity.** On May 24,

2010, he deliberately lied in a letter to Attorney Robert M. Vinci by stating the following: "At no time did I or the other three or four defense attorneys receive a notice of deposition for my client." Every other Defense Attorney and pro se Defendants, except Attorney Barbarula (notified by fax), were notified by certified mail regarding the deposition dates.

24. Lakeland Bank through its counsel violated Plaintiff's rights with impunity during the litigation, producing documentation in a piecemeal fashion, causing the Plaintiff to file several unnecessary motions, refusing to name the employee who processed Plaintiff's check, made payable to a specific company, Skylands Administrators, which was placed in an incorrect account, that of Skylands Benefit Consultants, at Lakeland Bank, which allowed those monies to be funneled to pay debts for the Florida strip club, and steadfastly refusing to produce the bank's paper work regarding this transaction. It's well documented that Barbarula refused to give Plaintiff the addresses of three Lakeland Bank employees, Laurie Veith, Timothy Matteson, and Peter Romaine, who the Plaintiff wished to depose and subpoena for trial. He also refused to have them show up in Court after they were properly subpoenaed through his office as per R 1:9-1 and R4:14-2. Laurie Veith, who answered the interrogatories for Lakeland Bank, was the most important witness of the entire case.

25. Lakeland Bank's counsel along with Attorney Lightman tried to blindside the Plaintiff when he arrived in Barbarula's office on December 9, 2008, by attempting to have Lightman, who had previously ignored Plaintiff's offer to pick a date for depositions and failed to show up for depositions on July 15, 2008, take Plaintiff's deposition over the telephone without notice from either party. While the Plaintiff had the right to take Lightman's client's deposition without notice having previously failed to show up for depositions, Lightman had no such authority or privilege as per rule 4:14-2.

26. Laurie Veith, an official of Lakeland Bank, violated Plaintiff's rights by ignoring his subpoena to show up in Court on August 17, 2009, after being subpoenaed through her Attorney, John Barbarula. The paperwork regarding the transfer of Plaintiff's money from Lakeland Bank, where it was **incorrectly** deposited and subsequently funneled to Florida to pay debts for "The Wild Coyote" strip club, was maliciously concealed by Veith and never turned over to the Plaintiff. She was not a simple clerical worker, being a vice president of Lakeland Bank. She had no special privileges to conceal documents or ignore a subpoena to show up in Court.

27. Timothy Matteson is an Attorney on the staff of Lakeland Bank. He involved himself in the case with the filing of document(s) and along with Attorney Barbarula attempted to blindside the Plaintiff on December 9, 2008, by attempting to have Attorney Lightman take Plaintiff's deposition over the telephone without any prior notice. He ignored a properly issued subpoena to show up in Court on August 17, 2009. Even allowing for the fact that he knew the case was being handled by a Judge who had monotonically demonstrated his contempt for a pro se plaintiff, same does not exculpate his requirement to respect the law and show up in court.

28. Peter Romaine was a Lakeland Bank official involved in security who ignored a properly issued subpoena to show up in Court. He refused to cooperate with the Plaintiff or the Manager of the Sussex Bank branch at which Plaintiff had his account during an investigation as to what had happened to Plaintiff's $25,000 check after it was presented at Lakeland Bank. He knew that a subpoena to attend court cannot be ignored.

29. A complaint was filed with the Office of Attorney Ethics regarding the villainous idiosyncrasies of the Attorneys. The abusive behavior of Attorney Lightman, including

insulting email and an abusive recorded telephone call, coupled with his lack of respect for the rules of court and the law, appeared far worse than the remaining counsel. John Palm was the Attorney assigned to investigate Lightman and he even refused to list the complaint with the New Jersey Bar Association. Robert Stober took a similar attitude. Charles Centinaro, Director of the Ethics Division has refused to take any action or speak with the Plaintiff in connection with the activities of any of the Attorneys complained of and is happy at sweeping everything under the rug. That agency obviously believes that their members should be allowed to lie, abuse individuals, ignore court rules and the law, and extricate themselves from any eventualities.

30. On July 13, 2007, a complaint, referenced B050-2007-01081, was filed with the New Jersey State Police Commander Edward Lyons at the Augusta Barracks. Nothing was done. On August 8, 2007, Plaintiff requested a copy of the investigative records as a result of his complaint with the State Police Criminal Justice Records, P.O Box 7068, West Trenton, NJ 08628-0068. The request was ignored. In the good old proud tradition of New Jersey corruption, James MacInness, an officer at the New Jersey Attorney General's Office, acted without conviction and the slightest interest in solving the case. He did absolutely nothing and made false allegations that the Plaintiff wasn't turning over documentation while he himself was doing nothing. He deserves to be found guilty of ignoring fraud and/or aiding and abetting same.

**CONCLUSION**

Judge Gannon behaved with malicious contempt for this Plaintiff from the inception of the proceedings while the defending attorneys read his message clearly and danced to his music showing total disrespect for the law, the rules of court and respect for individuals. In addition to

admitting that this Plaintiff had been defrauded, Gannon himself even admitted on September 12, 2008, that the attorneys were acting beyond the pale and stated: "***I do think that they should have dealt with you better in this case and that it would have been more productive to have simply co-operated with you.***" Along with the referenced attorneys, he demonstrated a total lack of respect for the law, the rules of court, and in particular the rights of the Plaintiff, whom he himself even admitted had been defrauded. At times he seemed completely at sea and in a daze in the court room. It's entirely plausible that his presence was unwelcome in two other counties in this state. He was requested on more than one occasion both verbally and in writing to recuse himself from the proceedings, but declined to do so and appeared to enjoy harassing the Plaintiff with nitpicking and sarcasm at every opportunity. He was insulting on more than one occasion with his derogatory claims about the Plaintiff's poor quality of written English as well as Plaintiff being a "political flunky." There is no reason to believe that Attorney Frank's document filed with the court as Attorney for Defendant James Flanagan wasn't removed fraudulently. His behavior violated all of the canons complained of beginning with Canon 2, A and B; Canon 3: A(1)(2)(3)(6)(7); B(1)(3b); C(1)(a). The Advisory Committee on Judicial Misconduct preferred to look askance at the Judge's scurrilous activities.

Wherefore the Plaintiff demands that damages be awarded against Judge Gannon in the amount of $14,000.00, finding that he is fifty percent responsible for aiding and abetting fraud against the Plaintiff throughout the trial. Fifteen hundred ($1,500.00) of this amount is for illegally awarding $750.00 to Margarita Cart for non-existent expenses, and an equal amount of $750.00 to Lakeland Bank. Additionally, punitive damages are demanded against Judge Gannon, the Committee on Judicial Conduct which includes Chairman Alan Handler, Director John Tonelli, and Attorney Candace Moody. The Plaintiff demands damages against Defendant

attorneys Gary Lightman, Barry Frank, John Breslin, Lakeland Bank and employees Laurie Veith, Timothy Matteson, and Peter Romaine, in the amount of $12,500.00 to be shared equally, in addition to punitive damages. The Plaintiff demands punitive damages against the New Jersey Office of Attorney Ethics including John Palm, Robert Stober, and Charles Centinaro for deliberately covering up for the illegal activities of its members, Matteson, Frank, Breslin, and Lightman. Additionally, the Plaintiff requests damages for the cost of this lawsuit.

Respectfully submitted, July 12, 2011

Harry Dunleavy
16 Price Road
Augusta, NJ 07822
Tel: 973 579 5295
Fax: 973 579 5457
Email: hdunleavy@embarqmail.com

Certified mail: 7010 1870 0002 9678 9669

**Affidavit of Harry Dunleavy**

Tuesday, July 12, 2011

I, Harry Dunleavy, Attorney Pro Se, being of full age, does hereby certify that the foregoing statements included in the enclosed amended complaint written by me are true to the best of my knowledge and belief. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Harry Dunleavy
16 Price Road
Augusta, New Jersey 07822
Tel: 973 579 5295
Email: hdunleavy@embarqmail.com

Before me today, July 12, 2011, came Harry Dunleavy, who is personally known to me. His signature appearing above was done in my presence.

ALEXIS CASE
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires February 25, 2013