NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HARRY DUNLEAVY, | : | |
| | : | |
| Plaintiff, | : | **Hon. Dennis M. Cavanaugh** |
| | : | |
| v. | : | **OPINION** |
| | : | |
| EDWARD GANNON, ALAN | : | Civil Action 2:11-cv-0361(DMC)(MF) |
| HANDLER, JOHN TONELLI, | : | |
| CANDACE MOODY, LT. JAMES | : | |
| MCINNESS, JOHN PALM, ROBERT | : | |
| STOBER, CHARLES CENTINARO, | : | |
| BARRY FRANK, JOHN BRESLIN, | : | |
| GARY LIGHTMAN, JOHN | : | |
| BARBARULA, LAURIE VEIGHT, | : | |
| TIMOTHY MATTESON, PETER | : | |
| ROMAINE, NEW JERSEY STATE | : | |
| POLICE, NEW JERSEY BAR | : | |
| ASSOCIATION, OFFICE OF | : | |
| ATTORNEY ETHICS, LAKELAND | : | |
| BANK, | : | |
| | : | |
| Defendants. | : | |
| | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before this Court on three motions by Defendants Frank, Breslin and Gary Lightman for attorneys' fees and costs owed.  On June 12, 2012, William D. Sanders, counsel from the McGivney & Klugler, PC firm representing Defendant Breslin, wrote to inform the Court that their motion should be withdrawn, the parties having settled the matter (ECF No. 116).  This Court terminated the motion on the same day.  The only motions remaining in this matter are motions for fees filed by Defendants Frank and Lightman (ECF Nos. 90 and 92).  Pursuant to FED. R. CIV. P. 78, granting this Court the authority to resolve the motion on the

papers, no oral argument was heard.  Based on the following, this Court hereby **grants in part
and denies in part** Defendants' motions for attorney's fees.

    **I.**      **BACKGROUND**

    Plaintiff Harry Dunleavy ("Plaintiff") filed several lawsuits arising out of the same facts.

Almost a dozen cases involving similar claims were filed in this Court and Plaintiff made several

unsuccessful trips to the Third Circuit on appeal.  (Breslin's Br. Supp. Sanctions 2, July 11, 2011,

ECF No. 47).  The first of these suits was filed in this Court in 2005.  Id. at 25.  Plaintiff then

filed in the Superior Court of New Jersey, Sussex County in 2007 against the same Defendants as

those named in the 2005 action.  Plaintiff thereafter filed grievances against attorneys who had

represented Defendants in the Superior Court action.  Finally, Plaintiff filed suit in this Court.

    Plaintiff's claims stem from the allegation that he lost personal funds that were being

wrongfully handled by the Defendants as an investment.  Plaintiff alleged that Charles W. Cart

fraudulently persuaded him to invest $25,000 in what Plaintiff believed to be a "health insurance

claims company" named Skylands Administrators.  (Pl.'s Compl. ¶ 1, Jan. 20, 2011, ECF No. 1).

Plaintiff alleged that the same funds were then "fraudulently and clandestinely funneled to pay

debts for a strip club in Florida called the 'Wild Coyote.'"  Id.

    Plaintiff's pattern of filing alone is egregious, let alone the frivolous nature of his claims.

Defendants filed six motions to dismiss in the instant action, which this Court granted with

prejudice in the Order and Opinion filed November 1st (hereinafter, the "November 1st Opinion")

(ECF Nos. 83).  Dunleavy v. Gannon, No. 11-cv-361, 2011 WL 5321004 (D.N.J. Nov. 1, 2011).

The November 1st Opinion granted the motions to dismiss with prejudice (ECF Nos. 26, 28, 29,

35, 41 and 12).

    Defendants Barry Frank (ECF No. 38), Gary Lightman (ECF No. 43), Laurie Veith (ECF

No. 44), John Breslin (ECF No. 47) filed four motions for sanctions pursuant to FED. R. CIV. P.

11.  On January 26, 2012, this Court granted those motions in the form of reasonable costs and

attorneys' fees and enjoined Plaintiff from filing further without Court approval.  (ECF No. 88).

This Court now reviews fee amounts declared by Defendants in the moving papers filed by

Defendants Frank and Lightman, these motions represent the only two remaining in this action

(ECF Nos. 90 and 92).

       Each attorney's claim for fees presents distinct arguments.  This Court now reviews the

evidence supporting each Defendant's declared fee amount for reasonableness.  Defendant Gary

Lightman appeared pro se.  Invoices from the firm reflect that Mr. Lightman spent 68.75 hours

on this matter, at a rate of $325.00 per hour.  Lightman Decl. Ex. A, at ¶ 14, Feb 23, 2012, ECF

No. 92-2.  In total, Mr. Lightman claims that he and his partner spent 77.45 hours on this matter

which amounted to $26,890.00 in fees, and that disbursements totaled $1,112.45.  Id. at ¶ 13-4.

Defendant Lightman seeks fees totaling $28,002.45.  Id. at ¶ 15.  Mr. Lightman reviewed

Plaintiff's complaint; communicated with counsel on several occasions; reviewed filings of other

Defendants; researched the causes of action asserted by Plaintiff in his complaint; researched and

prepared a motion to dismiss and an amended motion to dismiss; prepared a Rule 11 notice and

motion; researched and prepared a motion for sanctions and a brief in support; researched and

filed a motion for attorney's fees; researched and filed a Rule 1:4-8 motion; reviewed Plaintiff's

criminal complaint in the Superior Court and reviewed Plaintiff's filings in this action.  Id.

       Defendant Barry Frank was represented by Bruce Ettman.  As a long-standing client of

the Wolff & Samson, PC firm, Mr. Frank's bill represents the customary fee reduced by 20%.

Frank Decl. Ex. A, at ¶ 7, Feb. 21, 2012, ECF No. 90.  Invoices from the firm reflect that Mr.

Ettman spent a total of 169.1 hours on this matter.  Id. at ¶ 14.  Mr. Ettman's hourly rate was

$350.00 per hour until July 2011, and $375.00 thereafter.  Id. at ¶ 13(C).  Mr. Ettman's total

amount charged is $48,688.00, as stated, considering the 20% discount.  Id. at ¶ 14.  Two

partners and five paralegals at the firm also rendered services in connection with this matter, their

hours totaling 19.5.  Id.  Fees charged in the matter as a whole, amount to $54,916.40.  Id.  Total

disbursements billed are $1,224.36.  Id.  Mr. Frank seeks a total sum of $56,140.76 in fees.[1]  Id.

at ¶ 17; see also, Frank Decl. ¶ 20.  Mr. Ettman's firm was responsible for all aspects of Mr.

Frank's defense including the legal research and analysis; drafting, editing and revising of all

submissions to this Court; drafting, editing and revising all correspondence and preparing for and

engaging in all oral communications with the Court and all counsel.  Id. at ¶ 3.

## II.   STANDARD OF REVIEW

The bottom line purpose of a sanction under Rule 11 is deterrence.  The Court must be

mindful of the proportionality of the sanction, in that it is limited to what suffices to "deter

repetition of the conduct or comparable conduct by others similarly situated."  FED. R. CIV. P.

11(c)(4) (2007).  Courts have uniformly sanctioned litigants who attempt to relitigate issues

already decided, including those brought under the guise of constitutional and 42 U.S.C. § 1983

civil rights claims.  E.g., Napier v. Thirty or More Unidentified Fed. Agents, Employees or

Officers, 855 F.2d 1080, 1090 (3d Cir. 1988) (upholding sanctions where claims were identical

to other claims already adjudicated and therefore legally frivolous); see also, Balthazar v. Atl.

City Med. Ctr., 279 F. Supp. 2d 574, 594 (D.N.J. 2003) (imposing Rule 11 sanctions where the

Court concluded the litigant was merely attempting to relitigate unsuccessful state court claims).

Rule 11 furnishes this Court with the authority to direct payment to the movant, of part or

all of the reasonable attorney's fees and other expenses directly resulting from the violation.

---

[1]By February 21, 2012, Mr. Frank had paid a total of $27,861.13.  Id. at ¶ 16.

FED. R. CIV. P. 11.  Courts have found that sworn affidavits constitute competent evidence of claimed attorney's fees and expenses.  Mackler Prods. Inc. v. Cohen, 225 F.3d 136, 146 (2d Cir. 2000).  Further, presentation of such evidence gives the violator an adequate opportunity to challenge the accuracy of any such submissions.  Id.

In recognition of the broad discretion granted to the trial court to fashion sanctions under Rule 11, the Third Circuit enunciated an "abuse of discretion" standard for reviewing the initial decision to impose sanctions as well as the specifics of fee awards.  Doering v. Union Cnty. Bd. of Chosen Freeholders, 857 F.2d 191, 195 (3d Cir. 1988) (citation omitted).  While Circuit Courts have envisioned the trial courts imposing rigid guidelines in this "circumstance-specific area of the law, the judge should take pains neither to use an elephant gun to slay a mouse nor to wield a cardboard sword if a dragon looms."  Anderson v. Beatrice Foods Co., 900 F.2d 388, 395 (1st Cir. 1990).

### III.   DISCUSSION

### A.   Deterrent purpose of Rule 11

The balance of inquiries under Rule 11 weighs the interest in curbing abusive litigation tactics and misuse of process, against the interest in preserving the opportunity for unhindered, zealous advocacy.  The objective test adopted determines, after "reasonable inquiry," whether the pleading, motion or other paper is "well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law."  Gaiardo v. Ethyl Corp., 835 F.2d 479, 482 (3d Cir. 1987).  A finding of baseless pleading so extreme it constitutes abuse, may be deterred with an appropriate sanction that is either nonmonetary or monetary depending on what suffices "to deter repetition of the conduct or comparable conduct

by others similarly situated." FED. R. CIV. P. 11(c)(4).  It is well established that the Court must

work within this structure, imposing a sanction at "the minimum that will serve to adequately

deter the undesirable behavior" that precipitated the sanction.  Doering v. Union Cnty. Bd. of

Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1988).

  Awarding attorney's fees discourages Plaintiff from bringing baseless actions or making

frivolous motions, but it is not a compensation device.  The Rule's primary purpose is not

"wholesale fee shifting but [rather] correction of litigation abuse."  Doering, 857 F.2d at 194

(citing Gaiardo v. Ethyl Corp., 835 F.2d 479, 483 (3d Cir. 1987)).  As such, this Court must

review Plaintiff's conduct and the reasonableness of attorneys' stated fee amounts.  This Court

already concluded that monetary sanctions were appropriate and necessary to effect a deterrent

purpose.  That conclusion was reasoned upon Plaintiff's continued filing, despite warnings and

adverse holdings describing Plaintiff's failure to state a claim for relief.  See Op. 5, Jan. 26,

2012, ECF No. 88.  Under Rule 11 generally, the Court is empowered to award "reasonable

expenses, including attorney's fees, incurred for the [filing of the Rule 11] motion."  FED. R. CIV.

P. 11(c)(2).  The amount of the sanction must be limited according to the deterrent purpose of

Rule 11.

  **B.**  **Plaintiff's Conduct**

  Plaintiff has filed a multitude of lawsuits arising out of the same facts and claims.

Plaintiff inundated this Court with numerous frivolous filings.  Plaintiff made no effort to

identify meritorious claims, as his allegations were unsubstantiated by law or fact.  For example,

Plaintiff brought a claim under the Age Discrimination in Employment Act ("ADEA"), but failed

to provide any legal or factual support related to discrimination based on his age.  Additionally,

Plaintiff mentioned 42 U.S.C. § 1983 in his complaint against only private actors.

This Court granted Plaintiff great leniency as a pro se, however, the special circumstances of a pro se are analyzed considering a sliding scale based on the litigant's level of sophistication. See 27A Fed. Proc., L. Ed. § 62:771 (2012). Though physically Plaintiff's submissions to the Court appeared professional and well organized, a closer look into the materials showed that Plaintiff's lengthy arguments were neither grounded in law, nor frankly comprehensible. Plaintiff, for instance, extracted statements from opposing briefs and countered by rehashing summaries of forlorn cases he unsuccessfully prosecuted in New Jersey's State and Federal Courts, on similar and unrelated claims. See Pl.'s Resp. Breslin Sanctions Mot. 15, July 11, 2011, ECF No. 55. Plaintiff dragged the parties through over twelve months of frivolous litigation in this case. Defendants showed that they engaged with Plaintiffs' claims for far too long, through State Court proceedings as well as over a year's worth of filings in this Court. Plaintiff continued to file on the same claims despite Superior Court dismissals and explicit warnings of the frivolous nature of his filings. Plaintiff demonstrates a level of sophistication high enough for this Court to assume that he understood, but purposefully failed to heed, the repeated warnings he received regarding the frivolousness of his filings. The totality of this evidence speaks to the conclusion of this Court that Plaintiff filed pretextually seeking merely to harass Defendants.

      **C.**    **Reasonableness of fees**

Most Courts are making an effort to determine actual fees and expenses. However, thereafter those required to pay have no entitlement to a perfect match between an award and Defendant's legal fees. The final decision is left to the discretion of the Court based on Plaintiff's

conduct considering the exact amount of attorneys' fees as a reference point, not a conclusive element.  Plaintiff misused this Court to harass and embarrass the Defendants.  See, Op. on Rule 11 Mot. 13-14, Jan. 26, 2012, ECF No. 88.  Although Plaintiff's recognition and remorse are appreciated, his apology for conduct after the fact will not, of itself, result in a downgrade of fee award.  See, Gaiardo v. Ethyl Corp., 835 F.2d 479, 482 (3d Cir. 1987) (citation omitted) (observing that Rule 11 does not permit use of the "pure heart and empty head" defense); and Eastway Contr. Corp. v. City of New York, 762 F.2d 243, 253 (2d Cir. 1985) (finding that subjective good faith no longer provides the safe harbor it once did)).  Rather, this Court must first check the declared fees for reasonableness and then impose a sanction amount directly based on deterring the recorded conduct.

Plaintiff Harry Dunleavy faces sanctions in excess of $84,000 between the fee amounts from Mr. Frank and Mr. Lightman.  The Third Circuit has been careful to note that "reasonable" does not necessarily mean "actual" expenses.  Goaiardo v. Ethyl Corp., 835 F.2d 479, 483 (3d Cir. 1987).  This Court is guided by Rule 11's primary objective: deterrence.  DiPaolo v. Moran, 407 F.3d 140, 145 (3d Cir. 2005).  Compensation is considered in tandem with the Rule's deterrent purpose, however, Rule 11 sanctions should not be viewed as a general fee shifting device.  Id. at 483.  This Court must be wary of the significant risk that the victim of a Rule 11 violation could exploit the rule by maximizing costs in order to receive a massive sanctions award at the end of the litigation.  See, e.g., Gaiardo, 835 F.2d at 483 (holding the "duty of mitigation should minimize any excessive burden on the sanctioned party and diminish the tactical value of orchestrating motions to increase the cost of litigation for the other side"); see infra Part III.E.

The Court of Appeals made clear that the reasonableness inquiry involves consideration

of "various mitigating factors in [District Courts'] calculation of the total monetary compensation owed by [those] who have been found to have [engaged in litigation misconduct]." <u>Doering v. Union Cnty. Bd. of Freeholders</u>, 857 F.2d 191, 194 (3d Cir. 1988); <u>see also</u>, <u>Bartos v. Commw. of Pa., Dep't of Envtl. Prot.</u>, 2010 WL 2853643, at *7 (M.D.Pa. July 20, 2010).  Those factors include: (1) the violating party's ability to pay; (2) the public's interest in encouraging certain types of lawsuits; (3) the sanctioned party's history of filing frivolous actions; (4) the Defendant's need for compensation; (5) the degree of frivolousness of the action; (6) whether the frivolousness indicated that a less sophisticated or expensive response by the Defendant was required.  <u>Doering</u>, 857 F.2d at 197 n. 6.  These factors are relevant to determining reasonableness.  This Court is also mindful of the movant's "clear duty to mitigate," as cited above, and additionally in the Advisory Committee's note to the 1993 publication of Rule 11.

Given this Court's decision granting the motions for sanctions, the issues considered by these factors have been amply discussed in this matter.  Plaintiff submitted a complaint gravely lacking merit and support and presenting issues already adjudicated.  Further, Plaintiff's violation was egregious in its groundless quest for a result detrimentally effecting Defendants' personal and professional reputations.  Therefore, based on the review of Plaintiff's conduct contained in Section B <u>supra</u> and the reasoning contained in this Court's two prior opinions, this Court concludes without further analysis that factors two, three, five and six weigh in favor of Defendants.  This Court finds factor four neutral.  Factor one is discussed more fully in the following section.

**D.    Plaintiff's ability to pay**

Fees are not merely a compensation device, rather fees should be imposed for a deterrent

purpose.  Therefore, the actual amount of fees is persuasive, but not authoritative, as to a sanction amount.  Recent case law demonstrates that most courts are trying to insure that the sanctions are fair, reasonable, and bear some relation to the party or attorney's ability to pay and responsibility for the offending litigation.  A sanction should enforce the deterrent purpose of the statute, without subjecting the losing party to financial ruin.  In the Doering case, the Third Circuit found that the violating party's ability to pay was a particularly important consideration.  Doering v. Union Cnty. Bd. of Freeholders, 857 F.2d 191, 195 (3d Cir. 1988).  This Court is mindful of the related tenet of Rule 11 that sanctions should constitute no more than "the minimum that will serve to adequately deter the undesirable behavior."  Zuk v. E. Pa. Psychiatric Inst. Of the Med. Coll. Of Pa., 103 F.3d 294, 301 (3d Cir. 1996).  The Court married these concepts by noting that the deterrent effect of an award of attorney's fees depends upon the extent of the sanctioned party's resources.  See, e.g., Napier v. Thirty or More Unidentified Fed. Agents, Emps. or Officers, 855 F.2d 1080, 1094 n. 12 (3d Cir.1988).

Defendant Frank contends that Plaintiff provided this Court with "no evidence of his finances to enable it to conclude that he cannot pay the fees requested."  (Def. Frank's Reply 18, June 13, 2012, ECF No. 117).  Mr. Frank further characterizes Plaintiffs statements as vague where he writes that he and his wife "live on a fixed income which is derived from . . . social security benefits and investment income."  Id. at 18-19.  Defendant proffers evidence that Plaintiff's home is valued at $200,000, he pays $10,000 in real estate taxes, his income is less than $46,000, and Defendant thereafter points speculatively towards Plaintiff's home equity loan with a said value of $132,000.  Mr. Frank concludes that Plaintiff's claim that he cannot afford to pay sanctions is wholly unsupported by any objective, documentary evidence and is otherwise

not believable.

This Court finds Defendant's arguments conclusory.  It would be patently unfair to impose a sanction amount greater than Plaintiff's annual fixed income.  Further, this Court is not persuaded that the evidence put forth by Plaintiff's counsel, supported by a sworn affidavit, is unrealiable.  Imposing the sanction Defendants seek, in the full amount, would subject Plaintiff to financial ruin.  Such goes way beyond the intent of Rule 11, which is to impose a sanction limited to that which would deter similar future conduct.  Given the requirement that this Court consider Plaintiff's ability to pay, this Court must temper the sanction amount by considering Plaintiff's financial state.

### F.    Cut-off date

Plaintiff urges that sanctions should be cut-off as of January 26, 2012, the date of the Court's order imposing sanctions.  (Pl.'s Supp. Resp. 10, June 6, 2012, ECF No. 113).  Plaintiff urges that the substance of the matter was decided on that date, and states he made no frivolous filings since that date.  Id. at 6.  This Court agrees that imposing a cut-off would serve the public policy function of encouraging settlement as opposed to incurring additional fees and expenses. Id.

Mr. Ettman provided an invoice that identifies hours billed through January 2011.  The amount for that period totals $56,140.76.  Ettman Decl. ¶ 3, June 13, 2012, ECF No. 117-1.  A second invoice, dated March 21, 2012 includes an additional $3,695.00 for fees and disbursements.  Id. at ¶ 4.  The invoice clearly states that $3,369.22 was billed after January 26, 2012, the date of the Court's order imposing sanctions.  Ettman Decl. Ex. A, at 2.  Therefore, the total amount of fees awarded should not exceed $56,466.54, the total fees charged before the

11

cutoff date.

## IV.   <u>ANALYSIS</u>

### A. Gary Lightman

Plaintiff avers that Mr. Lightman is not entitled to fees because he appeared <u>pro se</u> in this matter.  (Pl.'s Opp'n Br. 19, June 6, 2012, ECF No. 113).  Plaintiff cites the <u>DiPaolo</u> case, in which the District Court in the Eastern District of Pennsylvania interprets the language of both Rule 11 and 28 U.S.C.A. § 1927, and finds that the relationship and accumulation of fees contemplated are absent when an attorney represents himself.  <u>DiPaolo v. Moran</u>, 277 F.Supp.2d 528, 534 (E.D. Pa. 2003), <u>aff'd</u>, 407 F.3d 140 (3d Cir. 2005).  The Court prohibited fees during the time the attorney spent representing himself, and considered fees for only the time he spent defending his law firm.  <u>Id.</u>  Further, the Court noted that of the three Circuit Courts of Appeals that have addressed whether <u>pro se</u> attorney litigants may receive fees as a result of the sanctionable conduct, two have held that <u>pro se</u> attorney litigants are barred from receiving fees for self-representation.  <u>Id.</u> at 535 (citing cases from the Eleventh Circuit and Federal Circuit for support and noting the contrary opinion from the Ninth Circuit).

This Court finds no basis upon which it would be appropriate to disagree with the Circuits' findings.  Mr. Lightman filed no response to Plaintiff's opposition arguments.  His attempt at distinguishing his own representation from the one addressed in <u>DiPaolo</u> is unsuccessful.  Although it is clear that Mr. Lightman is an individual, separate and distinct from his firm, he has not proven that the representation in this matter was in defense of his law firm.  Rather Mr. Lightman, as an individual and an attorney, defended himself.  This Court concludes that Mr. Lightman's fees will not be considered in the ordered sanction amount, despite any

12

compensatory purpose.

**B. Bruce Ettman**

Plaintiff argues that Mr. Ettman's claimed hours should be significantly pared down. Finding that the Doering mitigation factors weigh in favor of Defendants, this Court now considers the weight of evidence presented by Mr. Ettman in support of his claimed fee amount, and his duty to mitigate. This Court is also mindful to consider Plaintiff's "ability to pay" and the need to limit the award to what suffices to ensure violative conduct is deterred.

Mr. Ettman contends that Plaintiff filed more motions, applications, sur-replies and other submissions against Mr. Frank than against the Lakeland Bank Defendants. (Def. Frank's Reply 8, June 13, 2012, ECF No. 117). In the month of July 2011, Plaintiff filed fourteen pleadings of various forms. Plaintiff explains that it would be unreasonable for a "capable attorney of almost 28 years' experience . . . affiliated with one of New Jersey's premier law firms" to "research and analyze" Rule 11 on thirteen days within the same month. (Pl.'s Opp'n Br. 17, June 6, 2012, ECF No. 113). Regardless of Mr. Ettman's experience or the quality of his firm, the frequency with which Plaintiff filed created a substantial workload. Mr. Ettman mentions that complex issues were involved, including application of the Rooker-Feldman doctrine, issue and claim preclusion mechanisms and principles of federal abstention, as well as substantial time to familiarize himself with the substantive law involved in an infrequently filed Rule 11 motion. Finally, Mr. Ettman argues that this case presents a grave level of utter baselessness, but uniquely required sound and methodical rebuffing because of the potentially devastating personal and professional consequences of Plaintiff's accusations. Def. Frank's Reply 9.

Mr. Ettman supports the amount billed with a sworn affidavit, however, Plaintiff attempts

to show that the evidence is less than competent.  Plaintiff avers that Mr. Ettman's use of "block billing" to indicate time billed by is inconsistent with Local Civil Rule 54.2(a).  Further, Plaintiff contends that billings are vague, ambiguous, duplicative and suspect.  The rule requires a showing of the time spent in rendering each service.  Mr. Ettman provided itemized invoices documenting each project-hour billed.  See Def. Frank's Mot. for Fees Ex. A, Feb. 21, 2012, ECF No. 90-2.  Mr. Ettman explains that the first invoice dated April 26, 2011 covers the first month and a half of work and the "substantial time for research [and drafting] of the substantive and procedural issues necessary to make the successful Rule 12 and Rule 11 motions."  (Def. Frank's Reply 8).  The second invoice dated August 31, 2011 covers time expended in July 2011, which is the month in which Plaintiff filed most often.

Courts in this Circuit do not require a declaration of "the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney," but rather, "some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates."  Rode v. Dellarciprete, 892 F.2d 1177, 1190 (3d Cir. 1990) (citing Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp., 487 F.2d 161, 167 (3d Cir. 1973)).  This Court is not convinced that Mr. Ettman failed to substantiate or verify the tasks performed during the hours billed to a sufficiently specific level.

Plaintiff references the Thomas Application as a point of comparison to Mr. Ettman's time billed.   Walter E. Thomas, Jr. filed an application for fees for representing Defendants Laurie Veight, Timothy Matteson and Peter Romaine ("Lakeland Bank Defendants") in this

14

matter ("Thomas Application" or "Application") (ECF No. 95).  The Application was withdrawn

on April 11, 2012 (ECF No. 99).  In the Application, Mr. Thomas asserts that he rendered 30.7

hours of services for his three clients.

      Plaintiff points out that Mr. Ettman and his firm billed 188.6 hours, over six times the

amount billed by Mr. Thomas, for only one client Defendant Barry Frank.  Mr. Ettman and his

partner billed a total of fifty-eight hours in the first month despite the fact that only a proposed

order extending the time to answer had been filed.  (Pl.'s Supp. Resp. 11, June 6, 2012, ECF No.

113).  Mr. Ettman filed the motion to dismiss and supporting papers on April 21, 2011, at which

point he and his partner had billed another twenty-six hours.  Id.  Plaintiff points out that a total

of 84.4 hours were billed to file the motion to dismiss, and to perhaps prepare the Rule 11 papers.

Id.  Plaintiff also points out that Mr. Ettman billed thirty hours over fifteen days for the research

and writing of a reply brief to Mr. Dunleavy's opposition to the motion to dismiss and for

sanctions.  Id. at 11-12.  Plaintiff urges that unless Mr. Ettman can justify the number of hours

billed, the Court reduce his fee application by 83.3% (a five-sixths reduction).

      Weighing the competent evidence presented by Mr. Ettman against Plaintiff's counsel's

well supported arguments, this Court finds that the amount of attorney's fees awarded should be

pared down, granting considerable weight to Plaintiff's ability to pay.  Again, this Court notes

that the nature of Rule 11 is non-compensatory.  Other Courts have exemplified the practice of

using a claimed fee amount as a reference point, rather than a conclusive amount.  Given

Plaintiff's financial state, this Court finds that the sanction sought by Defendant Frank should be

limited to $28,233.27, or half of the total amount claimed for 188.6 hours billed, after discount

and considering that no charges should be incurred after the January 26, 2012 cut-off date.  Such

an amount represents a sanction that does not reach beyond its deterrent purpose.

     **V.**    <u>CONCLUSION</u>

     It does not appear that a lesser or non-monetary sanction than the following would adequately serve the deterrent purpose of Rule 11.  Based on the foregoing, for the reasons expressed herein, Defendant Lightman's motion for fees is **denied**.  Defendant Frank's motion for fees is **granted in the amount of $28,233.27**.  An appropriate order, filed on this day, follows this opinion.

S/ Dennis M. Cavanaugh     
Dennis M. Cavanaugh, U.S.D.J.

Date:         August <u>13</u>, 2012
Orig.:        Clerk
cc:          All Counsel of Record
               Mark Falk, U.S.M.J.